THEODORE H. EATON v. ALFRED L. CHESEBROUGH.

*Deed—Covenants—Taxes—Lien upon lands.*

1. The provision in the general tax law of 1889 (Act No. 195), making taxes a lien upon real estate on December 1 of the year in which they are levied, does not apply to Detroit city taxes.

2. City taxes levied under the charter of the city of Detroit, which makes them a lien upon real estate without fixing the time when the lien shall attach, become a lien on July 1, when the roll comes into the hands of the receiver of taxes.

3. May 22, 1889, a land-owner contracted for the sale of *vacant* land in the city of Detroit, and for the execution of a good and sufficient deed on July 1 of the same year. Provision was made for the examination of the title by a designated attorney, and, if not certified by him to be perfect, the contract was to be void.· The contract made no provision as to taxes or possession. The title was approved, and the deed executed on July 1, but was not *delivered* until the *afternoon* of said day, at which time the city taxes assessed for 1889 had become a lien on the land and were unpaid. The grantor refused to make such payment, which was made by the grantee, who brought suit for breach of the covenants in the deed against incumbrances, and to recover the sum so paid. And it is held that it was clearly the intention of the parties that the title to the land should be perfect on July 1, 1889, and that the grantee, having paid the taxes to relieve his land from their lien, is entitled to recover the money so paid in said action.

Error to Wayne. (Reilly, J.) Argued June 27, 1890. Decided August 1, 1890.

Covenant. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*Gray & Gray,* for appellant, contended:

1. Usually the time of the attaching of a lien is regulated by statute; citing Cooley, Tax'n (2d ed.), 447; and the lien of State and county taxes attaches December 1, and a vendor must pay

if he sells after that date; citing *Harrington v. Hilliard*, 27 Mich. 271.

2. The charter of Detroit makes the taxes a lien, but fixes no time when it shall attach.   Is it not from the time the property is taxed, which is when the assessment and levy are completed? The tax becomes a debt to the city on July 1, when the receiver gets the rolls.

3. But the debt to the State, and the lien, are not necessarily coincident; citing *Harrington v. Hilliard*, 27 Mich. 271.

4. When the statute is silent as to the date of the lien, various rules have been suggested.   Judge Cooley is of the opinion that it attaches when the tax is actually entered on the roll; citing Cooley, Tax'n (2d ed.), 448; and in California it attaches upon the assessment; citing *Reeve v. Kennedy*, 43 Cal. 643; and in Vermont it attaches when the collector manifests his intention to pursue the land, which relates back to time of assessment; citing *Hutchins v. Moody*, 34 Vt. 433; and in Massachusetts it attaches from date of assessment; citing *Cochran v. Guild*, 106 Mass. 29; *Hill v. Bacon*, 110 Id. 387; *Davis v. Bean*, 114 Id. 358; *Swan v. Emerson*, 129 Id. 289; and to the same effect, see Burroughs, Tax'n, 272; *McLaren v. Sheble*, 45 Mo. 130; and in New York a tax is not an incumbrance till confirmed, implying that after confirmation it becomes so, whether actually extended or not; citing *Dowdney v. Mayor*, 54 N. Y. 186; and a tax is a lien when the levy is made; citing *Barlow v. Bank*, 63 N. Y. 399.

5. The early correspondence was merged in the contract of May 22, 1889, whereby the papers were to pass July 1, 1889, and it cannot be claimed that plaintiff agreed to buy the land as of an earlier date.

*George W. Radford*, for defendant, contended:

1. The deed contains a clause that it is given pursuant to the contract of sale, and, as the rights of third parties are not affected, the doctrine of relation applies, and the covenants relate back to such contract; citing 1 Devlin, Deeds, § 264; *Jackson v. Raymond*, 1 Johns. Cases, 85; *Jackson v. Bull*, Id. 90; *Heath v. Ross*, 12 Johns. 140.

2. The charter is silent as to the time when the lien for taxes attaches, and, applying the doctrine of *Harrington v. Hilliard*, 27 Mich. 271, no lien can be claimed in this case until the roll was placed in the hands of the tax receiver, and they became due and payable to him, July 1, 1889, as up to that date the taxes could not have been paid by or to any one.

CAHILL, J. This is a suit, brought for an alleged breach of covenant against incumbrances in a warranty deed given by defendant to plaintiff, for the recovery of the amount paid by plaintiff for city taxes after the delivery of the deed.

On May 15, 1889, defendant was the owner of lots 57 and 58, and the northerly 10 feet of lot 105, section 3, governor and judge's plan of the city of Detroit. On that date plaintiff made defendant a written offer for such property of $1,000 cash on acceptance of the offer, and $20,000 on July 1, 1889, all papers pertaining to title to be approved by W. J. Gray at defendant's expense. Defendant accepted the offer in writing on May 22, 1889, and plaintiff paid defendant $1,000 down, and a new contract was drawn up and executed by the parties. This contract was to the same effect as the written offer and acceptance. It contained nothing about taxes, nor about the possession of the premises before July 1. It contained the following clause:

"It is understood that the title of the last described property, in Detroit, shall be examined by William J. Gray, of Detroit, and, if not certified by him as good, then this agreement shall be void, and said $1,000 paid by the second party be returned to him by the first party."

On or about June 25, 1889, Mr. Gray approved the title, and defendant was notified. In the afternoon of July 1, 1889, the parties met by appointment, and plaintiff paid defendant $20,000, the balance of the purchase price. Defendant executed and delivered to plaintiff a warranty deed. Immediately after the description of the property in the deed, the following clause appears:

"This deed is made in pursuance of contract of sale made by proposition of the grantee herein, dated May 15, 1889, and accepted by grantor herein, May 22, 1889."

After the delivery and acceptance of the deed, and on July 12, 1889, the plaintiff called upon the defendant to pay the city taxes for the year 1889, amounting to $260.08, which defendant refused to do. Thereafter, and on July 20, the plaintiff paid the taxes in question, and brought this suit to recover the same from Chesebrough under the covenants of his deed. The case was tried before the Honorable C. J. Reilly, circuit judge, without a jury, who, at the request of the parties, made and filed written findings of fact substantially as herein stated, and, as a conclusion of law, he found that the plaintiff was not entitled to recover.

In addition to the facts already stated, the following facts appear in the judge's finding:

"7. That the board of estimates of the city of Detroit, on April 15, 1889, duly approved and adopted their final estimates of the amounts to be raised by taxation for city purposes in 1889, aggregating $2,236,463.54.

"8. That the common council of the city of Detroit, on April 16, 1889, accepted the report of the board of estimates, and duly levied and assessed upon the real and personal property in the city of Detroit the sum of $2,236,463.54, as the city taxes for 1889.

"9. That on May 1, 1889, the assessment rolls for the city of Detroit for 1889 were finally adopted and duly confirmed by said common council, the total assessed valuation as so confirmed being $165,505,790.

"10. That said premises were duly assessed upon said rolls, and so confirmed. 　*　*　*　*　*　*　*　*

"11. That the board of assessors spread upon the said assessment rolls for the city taxes of 1889 the sum so levied, and that said premises were assessed for taxes as follows, which said amounts were actually extended upon the rolls between June 1, and June 20, 1889　*　*　* [aggregating $260.08].

"12. That the tax rolls for the city taxes of 1889 were delivered, with proper warrants of collection, to the city receiver of taxes on June 29, 1889, and were ready for payment at the opening of business at 9 o'clock in the morning of July 1, 1889."

"16. That the said premises were vacant property on May 15, 1889, and so remained till after July 10, 1889.

"17. That the fiscal year for the city of Detroit, for which said taxes were paid, began on the 1st of July, 1889, and will expire on the 30th day of June, 1890."

Under the charter of the city of Detroit the council has power to levy and collect taxes upon all property made taxable by law for State purposes, which taxes are declared to be a lien upon the property till paid; to make regulations for assessing, levying, and collecting such taxes, and to sell the property taxed in default of payment. By ordinance the city has provided for a sale of the property delinquent for such taxes by an officer of the city, and such taxes are not returned to the county treasurer's office, nor are the lands sold by the Auditor General for delinquent city taxes under the general law. While the charter of the city makes the taxes a lien upon real estate, it nowhere provides at what time such lien shall attach. Under the general law of the State (Act. No. 195, Laws of 1889), taxes assessed upon real estate become a lien thereon on the 1st day of December. But the city taxes levied in Detroit cannot be governed by this general law.

The question here to be decided is, when did the city taxes for 1889, levied upon the property sold by defendant to plaintiff, become a lien upon that property? Plaintiff's counsel insist that the warranty in the deed speaks from its date, and that, as the taxes were due and payable in the forenoon of July 1, 1889, and the deed was not delivered until the afternoon of that day, at the time of the delivery of the deed the taxes in question were a lien upon the property. To this the defendant's counsel replies that the deed contains a clause that it is given in pursuance of a contract of sale, and that, as the rights of third parties are not affected, the doc-

trine of relation applies to the covenant, and the deed relates back to the contract of sale. If by this counsel for defendant means that it was intended by the parties that the plaintiff should take the title as it existed at the time the contract was made (May 22), I do not agree with him. There is nothing in the contract to support such a position. On the other hand, it was clearly the intention of the parties that the title to the property should be perfect on July 1, which was the date set for concluding the purchase. This is evident by the fact that Mr. Gray was, after the making of the contract, and before July 1, to investigate and certify to the title. It would not be claimed that if Mr. Gray had discovered any incumbrance upon this property executed after the contract was made the plaintiff would have been bound to take the property subject to such incumbrance. If the taxes complained of had been called to the attention of the parties on the afternoon of July 1, before the deed was delivered, upon inquiry at the collector's office it would have been ascertained that they amounted to $260.08; that they were then payable, and were a charge upon this land. The plaintiff could then have insisted upon the taxes being paid before he paid the purchase money and accepted the deed; nor would he have been liable under his contract to take the property and pay the money, unless these lands were relieved of this charge against them.

It is not insisted by either side that these taxes had not become a lien upon this property on the 1st of July. Plaintiff's counsel insisted that they became a lien at the time of their assessment, in May. We do not think this position is correct. The exact question involved here has not been passed upon in this State. We are referred by defendant's counsel to the case of *Harrington v. Hilliard,*

27 Mich. 373. We think some of the language of that opinion is applicable here:

"It is therefore clear that up to this time [first Monday in December] there is no tax upon the land which can be paid by or to any one, nor until about this time could the amount be in any way ascertained, and the land is just as clear from any charge or lien on account of the taxes to be assessed for the current year as it is from those of any future year."

Applying this doctrine to this case, we think the lien must be held to attach to lands under the charter of the city of Detroit from the time when the roll comes into the hands of the receiver of taxes, which is the first day of July. But this, we have seen, was ·before the making and delivery of the deed from the defendant to the plaintiff. The defendant was, at the time the deed was executed, and before its delivery, under obligation to pay these taxes to relieve his land from the liability which it was then subject to.

Some stress is laid upon the fact that the plaintiff required Mr. Gray's opinion as to the state of the title, and it is urged that, having obtained that opinion, he must be bound by it. The plaintiff did not undertake to accept Mr. Gray's opinion in lieu of the covenants of · warranty, but he desired such opinion in addition to the covenants. There is nothing in this circumstance that will prevent him from having the benefit of the covenants in his deed. Having paid these taxes to relieve his lands from the lien on them, he is entitled to recover them back in this action.

The judgment is reversed, with costs, and a new trial granted.

The other Justices concurred.